# In the United States Court of Federal Claims

No. 18-512C
(Filed: May 4, 2018)*
*Opinion originally filed under seal on April 20, 2018

| | |
|---|---|
| TECHNIK, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> VSOLVIT LLC, ) <br> ) <br> Defendant-Intervenor. ) <br> ) | Post-Award bid protest; Challenge to technical rating; Responsibility of offeror to provide adequately written proposal; No requirement for best-value tradeoff where highest-rated is lowest priced. |

*David S. Black*, Tysons, VA for plaintiff. *Gregory R. Hallmark*, Tysons, VA, of counsel.

*Robert C. Bigler*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman Jr.*, Director, and *Claudia Burke*, Assistant Director for defendant. *Major Allen Stewart*, Trial Attorney, U.S. Army Legal Services Agency, Ft. Belvoir, VA and *Leigh Anne Bunetta*, Regional Counsel, U.S. General Services Administration, Denver, CO, of counsel.

*Matthew T. Schoonover*, Lawrence, KS for defendant-intervenor. *Steven J. Koprince, Matthew P. Moriarty*, and *Ian P. Patterson*, Lawrence, KS, of counsel.

**O P I N I O N**

**FIRESTONE**, *Senior Judge*

In the pending action, plaintiff, Technik Inc. ("Technik"), contends that the United States ("the government") was arbitrary, capricious, abused its discretion or failed to act in accordance with law when the General Services Administration ("GSA") on behalf of the Department of the Army's Dugway Proving Ground, West Desert Test Center Test Network, in Utah ("Dugway Proving Ground") awarded defendant-intervenor VSolvit LLC ("VSolvit") a contract for information support services.[1]  Technik has been the incumbent contractor for network operations for the last four years and was the subcontractor on network operations for six years before then. Technik filed this bid protest on April 6, 2018 and a motion for a preliminary injunction on April 13, 2018.  At oral argument on Technik's motion for a preliminary injunction, heard on April 26, 2018, all parties agreed that the memoranda filed by them in either support or opposition to the preliminary injunction motion would be sufficient for the court to rule on the merits of Technik's objection to the award.  With that understanding, the court is prepared to rule on the merits of Technik's bid protest.

For the reasons set forth below, the court finds that the government is entitled to judgment on the administrative record.

---

[1] Both Technik and VSolvit are small businesses and are participants in the Small Business Administration's section 8(a) program.

**I. Background Facts**

    a. **Initial Solicitation and GAO Protest**

On January 12, 2017, the GSA issued RFQ No. ID08160098 ("January 2017 RFQ") for the same services that are now before the court in RFQ No. ID08170075. In the January 2017 RFQ, GSA was seeking a contractor to provide "technical support to operate, configure, test, and maintain network operations at the Department of Army's Dugway Proving Ground." AR at 14. The January 2017 RFQ was awarded on July 24, 2017, to Technik. AR at 339. The award to Technik was challenged before the U.S. Government Accountability Office ("GAO") by two unsuccessful offerors. AR at 339. In response to the GAO protest, the GSA voluntarily agreed to take corrective action and cancelled the award to Technik. *Id.* The GAO then dismissed the protests.

    b. **Current Solicitation**

On August 30, 2017, GSA issued the Request for Quotation ("RFQ") now at issue. AR at 50. The RFQ included a Performance Work Statement or "PWS" that identified six separate tasks. AR 61-73 (PWS 1.3.1-6). The rating at issue in this case involves Task 5, which calls for "Custom Software development." The PWS specified that the contractor would provide "custom software development support" and that the "[c]ontractor shall not cross-utilize personnel for this function." AR at 72 (PWS 1.3.5.2). The RFQ provided that the award would be made to the offeror whose quotation provided the best value after evaluating three factors: (1) approach; (2) past performance; and (3) price. AR at 127-29. The RFQ explained that the non-price factors, when combined, were significantly more important than price. AR at 127.

With regard to "Factor 1 – Approach," the RFQ provided:

> Vendors should submit its proposed approach that will be used to satisfy the requirements as identified in the PWS (Attachment 1.)  The approach should, at a minimum, include narrative addressing the following:
> 1. Vendor's staffing approach specific to the US Army, West Desert Test Center location (Dugway Proving Ground). The staffing approach should outline the recruitment and retention of staff meeting the minimum qualifications and certifications required by PWS Enclosure A.  Staffing approach should also describe how the staff will be utilized to accomplish the work.  Special attention should be given to the Dugway Proving Grounds remote location.
> 2. Transition Plan which describes how full serviceability will be achieved by the period of performance start date.
> Basis of Evaluation:
> Vendor's approach will be evaluated to determine if the approach adequately satisfies the requirements identified in the PWS.  The approach will be evaluated to determine the degree to which recruitment and retention of personnel, staffing mix and level of effort, and utilization of staff demonstrates successful performance.  A staffing approach with less risk may be rated more favorably.  The transition plan will be evaluated to determine if it is realistic to achieve successful transition by the period of performance start date.

AR at 127-28.

Attachment 2 to the RFQ set forth the Pricing Schedule which allocated the six PWS tasks to specific Contract Line Item Numbers ("CLINS").  Pl.'s Brief, App. at 37-40.  The RFQ's CLIN assignment was as follows: Tasks 1-4, which were firm fixed price tasks, would be under CLIN 0001;  Task 5, which was a labor hour-type task was under CLIN 0002; and Task 6, which was also a labor hour-type task was under CLIN 0003. *Id.*

### c. Technik's Quotation

On October 2, 2017, Technik submitted a quotation under the new RFQ with a price of $13,758,811.20. AR at 143-61. In the Non-Price Volume of its proposal, Technik explained how it would allocate Full-Time Equivalent ("FTE")[2] to accomplish the PWS tasks and provided several figures, tables, and charts to explain how it proposed to allocate FTE among the six tasks set forth in the PWS. Technik does not dispute that it did not state in its proposal that it would not "cross-utilize personnel" for Task 5.[3] Instead, Technik contends that it met the solicitation requirement by providing for 2 separate FTE in the organizational charts for Task 5 and in the Task 5 CLIN description included in its proposal.

Specifically, Technik provided an organizational chart, Figure 1, where it divided the work to be performed into five teams comprised of various FTEs. AR at 150. As part of Figure 1, Technik identified two FTEs, a Software Development Lead and a Software Developer, in Team 1 (Software Development Team) which were assigned to Task Order 5. *Id.* Next, Technik provided a table entitled "Table 2: Team Composition. Staffing Mix and Level of Effort" where it provided that Team 1 would consist of one Software

---

[2] In this connection, FTE are not the same as "employees." FTE is defined as the total number of regular straight-time hours worked by employees divided by the number of compensable hours applicable to each fiscal year. The Office of Personnel Management defines on-board employment as the number of employees in pay status at the end of the quarter. JULIE JENNINGS AND JARED C. NAGEL, CONG. RESEARCH SERV., R43590, FEDERAL WORKFORCE STATISTICS SOURCES, OPM AND OMB (2018).

[3] In Technik's proposal for the January 2017 RFQ, Technik expressly stated that it would not cross-utilize personnel for the software development task. Specifically, Technik stated that "[t]wo (2) additional FTE's (one lead) provide Labor Hour (LH) type custom software development support and will not be cross-utilized for any other function." AR at 46.

Development Lead, One Software Maintenance Lead, and Two Software Developers for a total of four FTEs.  AR at 151.

In "Table 3: Team Level of Effort, Responsibilities and Technical Execution Activity Summaries" Technik explained that the four FTEs under Team 1 would be responsible for Tasks 4 and 5.  AR at 152.  In the text introducing Table 3, Technik stated that the five teams "are cross matrixed to support the nine PWS Task Areas" and that "[a]ll proposed FTE will support multiple PWS areas."  *Id.*

Technik also included a staffing chart which provided the composition of the various teams, the proposed labor category, the proposed staff member, and the PWS Task to be performed by that FTE.  AR at 157.  The staffing chart provided that there would be an FTE for Software Development Lead and an FTE for Software Developer only assigned to Task 5.  *Id.*

Finally, in its price proposal, Technik included a "Pricing Backup" tab which included a "Pricing Schedule" that contained a breakdown of the proposed FTEs between the different CLINs.  App at 81.  The Pricing Backup showed that the Software Development Lead and the Software Developer would be assigned to CLIN 0002, which is a labor hour-type CLIN used only to support Task 5, but did not specify the number of hours of work they would perform.  *Id*

### d. Evaluation of Technik's Quotation

Technik's quotation was initially reviewed by a Technical Evaluation Team ("TET").  The contracting officer ("CO") determined that the TET's evaluation was not in accordance with the RFQ because it "did not apply the standards to each vendor

consistently" and failed to provide sufficient "supporting detail [and] rationale[.]" AR at 193.  As a result, the CO directed GSA Region 8's Director of Assisted Acquisition Services ("Region 8 Director") to conduct a new technical evaluation in accordance with the RFQ criteria and to provide a recommendation.  *Id.*

The Region 8 Director conducted an evaluation and found that with regard to Factor 1-"Approach," that Technik's proposal was "Marginal."  AR at 185.  The Region 8 Director explained that Technik was rated "Marginal" because it had "failed to provide staffing in accordance [with] PWS Section 1.3.5.2."  Specifically, the Region 8 Director stated that:

> There are concerns with [Technik's] ability to adequately satisfy all aspects of the PWS.  [Technik] proposes to use the personnel for the software customization task (PWS Section 1.3.5.2) which is not allowable (as stated in the PWS) and causes concern about the vendor's ability to successfully execute the work.
>
> The vendor proposes the incumbent personnel at a level of 16.5 FTE (Page 7, Figure 1).  Technik outlines how each FTE will be used to execute the work outlined in the PWS (Page 9-13, Table 3).  The FTE level and staffing mix provide an executable approach for the [firm fixed price] piece to successfully accomplishing the work however it appears that the same personnel will be involved in the [labor hour] work is not in compliance with the PWS (Section 1.3.5.2).  The vendor's approach to cross-utilize personnel is inconsistent with the requirements of the PWS (Section 1.3.5.2).
> AR at 185.

Subsequently, the CO independently evaluated Technik's proposal for Factor 1 – Approach and agreed with the Region 8 Director that Technik failed to satisfy all of the PWS requirements.  AR at 194.  Specifically, she concluded that Technik's proposal did

not satisfy the basis of evaluation standard for Factor 1 – Approach in two ways. The CO states:

> This utilization of staff is not in compliance with the PWS (Section 1.3.5.2). Specifically, the vendor's approach to cross-utilize personnel is not permitted by this PWS requirement. As a result, Technik failed to meet components (1) [The vendor's approach adequately satisfies the requirements identified in the PWS] and (2) [The recruitment and retention of personnel, staffing mix and level of effort, and utilization of staff demonstrates successful performance] of the standard.
> AR at 194-95.

While the CO recognized that, as the incumbent, Technik offered a good approach with little to no transition time, the CO concluded that Technik's approach would allow for the cross-utilization of staff for the labor hour-type work, i.e., Task 5, which is expressly prohibited under the RFQ. AR at 198. As a result, the CO rated Technik as Marginal for Factor 1 – Approach. With regard to Factor 2 – Past Performance, the CO rated Technik as Excellent. AR at 197.

### e. VSolvit's Quote, Evaluation, and Award

VSolvit submitted a quotation to the RFQ, with a proposed price of $11,476,628.80, which is more than $2 million below Technik's proposed price. AR at 197. VSolvit received an Excellent for Factor 1 – Approach and an Excellent for Factor 2 – Past Performance. *Id.* There is no dispute that VSolvit complied with PWS 1.3.5.2 and did not propose to cross-utilize any personnel assigned to Task 5. On December 7, 2017, the task order was awarded to VSolvit. AR at 200.

### f. GAO Protest

On December 15, 2017, Technik filed a bid protest before the GAO. In its GAO protest, Technik challenged the "Marginal" rating it received for Factor 1 from the CO and the "Excellent" rating VSolvit received from the CO. AR at 202-221. Contract performance was stayed during the pendency of the GAO protest. Technik argued before the GAO, as it does here, that the staffing charts made clear that Technik was not proposing to cross-utilize personnel for Task 5 because separate FTE were identified in its quotation. AR at 209-217.

On March 22, 2018, GAO issued a decision denying Technik's protest. AR at 421-26. The GAO explained that GSA was not unreasonable in concluding that Technik proposed utilizing the same personnel on both Tasks 4 and 5 based on Technik's quotation which stated that all teams, including Team 1 for Tasks 4 and 5, "are cross matrixed to support the nine PWS Task Areas" and that "[a]ll proposed FTE will support multiple PWS areas." The GAO also noted that Technik in its quotation also stated that Team 1, for Tasks 4 and 5, will be providing "software development and maintenance" with four FTE without expressly stating that different FTE would be used to provide the development function. In upholding GSA, the GAO rejected Technik's argument that its staffing charts showed that Tasks 4 and 5 were divided between two different sets of FTEs. The GAO explained that an offeror has "an obligation to submit a well-written quotation: one that is free of ambiguity regarding its merits or compliance with solicitation requirements." AR at 424 (citing *Cubic Simulation System*, B-410006; B-410006.2 CPD ¶299 (Comp. Gen. Oct. 8, 2014)). The GAO concluded that the staffing

charts identified by Technik, "at best introduced ambiguity between Technik's discussion of the organization of its staffing in its quotation and the staffing chart, and thus is insufficient to demonstrate that the GSA's evaluation was unreasonable." AR at 424. After rejecting all of Technik's other objections to GSA's selection of VSolvit, GAO denied Technik's protest. AR at 425-26.

### g. Protest Before This Court

Technik filed its complaint in this court on April 6, 2018. ECF No. 1. Technik did not include a motion for a temporary restraining order or preliminary injunction with its complaint. Following the preliminary status conference on April 9, 2018, Technik filed a motion for a preliminary injunction on April 13, 2018. ECF No. 15. The government and VSolvit filed their responses in opposition to Technik's motion for a preliminary injunction on April 20, 2018. ECF Nos. 21 and 22. Technik filed a reply in support of its motion on April 24, 2018. ECF No. 23.

The court heard oral argument on Technik's motion for a preliminary injunction on April 26, 2018. As noted at the outset of this opinion, at the conclusion of oral argument, all parties agreed that further briefing would not be needed to resolve the merits of Technik's protest under the standards set forth in 28 U.S.C. § 1491(b).[4]

---

[4] Technik agreed that the administrative record that had been prepared for the GAO proceeding and included the basis for the CO's rating and award decisions was sufficient for the court to rule on the merits of Technik's objections before this court.

## II.   Legal Standards

The United States Court of Federal Claims has "jurisdiction to render judgment on an action by an interested party objecting to . . . the award of a contract [by a federal agency] or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1).  Under 28 U.S.C. § 1491(b)(4), this court reviews agency decisions under the "standards set forth in section 706 of [T]itle 5" of the Administrative Procedure Act ("APA").  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under section 706 of Title 5, an agency's decision may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (quoting *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  This review is on the administrative record and requires the court to consider whether, based on the evidence in the record, the agency decision: (1) "lacked a rational basis" or (2) "involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332 (citations omitted); *see also* 5 U.S.C. §§ 702, 706(2)(A).

The court's review is "highly deferential" and "the disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" *Bahrain Mar. & Mercantile Int'l BSC (C) v. United States*, 118 Fed. Cl. 462, 477 (2014); *Impresa*, 238 F.3d at 1333 (citation omitted).  With regard to alleged errors of law, a protestor must demonstrate "'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238 F.3d at 1333 (citation omitted); *see also Data Gen. Corp. v.*

*Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.").

### III. Discussion

As discussed above, Technik's principal challenge is with regards to the Marginal rating it received from the CO with respect to Factor 1 – Approach. As discussed infra, Technik also challenges the CO's failure to engage in a best value tradeoff evaluation. With regard to Technik's Marginal rating, Technik argues before this court as it had before the GAO, that the CO's rating decision is based on a misreading of its quotation. Technik contends that had the CO properly read its quotation she would have understood that Technik was not planning to cross-utilize personnel for the software development and maintenance work identified in Tasks 4 or 5 of the PWS. Rather, Technik contends, the staffing charts and pricing materials it provided with its proposal made clear that separate FTEs would be assigned to software development and that these FTE would be assigned only to Task 5.

The government argues that the CO's reliance on the express text in Technik's proposal to the effect that all five teams would be "cross matrixed to support the nine PWS Task Areas" and that "[a]ll proposed FTE will support multiple PWS areas" to conclude that Technik failed to commit to not cross-utilize personnel for Task 5 for other tasks, as required by the RFQ, was reasonable. Accordingly, the government argues, the Marginal rating was rational. As the government explains, the prohibition in the RFQ regarding cross-utilizing personnel assigned to Task 5 was needed to ensure that

personnel assigned to the fixed price portion of the contract could not also submit bills based on labor hours for Task 5. The government argues that the charts Technik provided only show that there would be a Software Development Lead FTE and a Software Developer FTE for Task 5.[5] At best, the government contends, Technik's charts create an ambiguity in Technik's proposal regarding cross-utilization of FTE. An ambiguity, according to the government, however, is not enough to affirmatively establish that Technik would not cross-utilize software developers assigned to Task 5 with any other tasks. For this reason, the government concludes, the CO's rating was not irrational and must be upheld.[6]

The court agrees with the government. "[I]t is an offeror's responsibility to demonstrate that its proposals comply with the solicitation's mandatory requirements to be technically acceptable." *Sentrillion Corp. v. United States*, 114 Fed. Cl. 557, 567 (2014) (citing *L-3 Global Commc'ns Solutions v. United States*, 82 Fed. Cl. 604, 609 (2008)). Furthermore, "[i]t is an offeror's obligation to submit an adequately written proposal for the agency to evaluate, and an offeror fails to do so at its own risk." *Innovative Commc'ns Techs., Inc.,* B-291728, B-291728.2 CPD ¶ 58 (Comp. Gen. March 5, 2003) (citation omitted). Here, to comply with the solicitation's technical requirements, Technik needed to unequivocally state that it would not cross-utilize any

---

[5] Although not expressly discussed by the CO, the court notes, as it did previously (n. 3), that in Technik's initial quotation under the first RFQ, Technik explicitly stated that the two software developers assigned to Task 5 would not be cross-utilized for other tasks. AR at 46.

[6] In its memorandum, VSolvit also argues that Technik has only shown a potential ambiguity in its proposal and not that the CO's determination was irrational.

personnel assigned to Task 5 with other Tasks.  Technik concedes that it did not do this.  Rather, it points to several charts and pricing documents to suggest that a careful reading of its entire proposal shows that there are two FTEs assigned only to Task 5. The court agrees with the government and the GAO that at best Technik's charts create an ambiguity as to what Technik meant when it stated in the introduction to the third chart that Technik proposed to use "all" FTE "to support multiple PWS areas."  Without an affirmative statement to the effect that the personnel, not FTE, assigned to Task 5 would not be used for other Tasks, Technik's objections to the CO's reading of its proposal is merely a disagreement with how its proposal was interpreted. "[A]n offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *Banknote Corp v. United States*, 56 Fed. Cl. 377, 385 (2003).  For the reasons stated, the court finds that the CO's rating of Technik's proposal was rational.

      Having concluded that the CO's Marginal rating for Technik's approach was rational, the court also concludes that Technik's challenge to the CO's decision to not perform a best-value tradeoff is without merit.  The government argues that there was no reason to conduct a best-value tradeoff because there was nothing to tradeoff.  Technik received a Marginal rating on Approach, compared to VSolvit's Excellent rating on Approach and VSolvit's price was more than $2 million lower than Technik's price.  In such circumstance, the court agrees that a best-value tradeoff analysis was not required.  *See Carahsoft Technology Cor. v. United States*, 86 Fed. Cl. 325, 349 (2009) (holding that "where proposals are technically equal, a best-value tradeoff analysis between price

and technical factors is not required.") and *Matter of Segovia Inc., d/b/a Inmarsat Government,* B-408376, B-408376.2 CPD ¶ 203 at 9-10 (Comp. Gen. Sept. 3, 2013) (holding "[w]here . . . the highest-technically-rated, lowest-priced proposal is selected for award, a price/technical tradeoff is not required."); *see also Rotech Healthcare, Inc.,* B–410203, B–410203.3, CPD ¶333 (Comp. Gen. Nov. 5, 2014). VSolvit's higher Approach rating coupled with its significantly lower price would not necessitate the government performing a best-value tradeoff. Thus, the court finds that the CO's selection of VSolvit without a best-value tradeoff determination was rational and must be upheld.[7]

## CONCLUSION

For all of the reasons discussed above, Technik has failed to demonstrate that the CO's decision to award the contract to VSolvit as arbitrary, capricious, or otherwise not in accordance with law. Accordingly, the Clerk is directed to enter judgment for the government. No costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge

---

[7] Because Technik has failed to prevail on the merits of its claims against the government, the court has no occasion to rule on its request for permanent injunctive relief and Technik's motion for a preliminary injunction is **DENIED** as moot.